**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **GLEN DALE DAVIS,** | ) | |
| **ID # 1760020,** | ) | |
| **Petitioner,** | ) | |
| **vs.** | ) | **No. 3:13-CV-4435-B (BH)** |
| | ) | |
| **WILLIAM STEPHENS, Director,** | ) | **Referred to U.S. Magistrate Judge** |
| **Texas Department of Criminal** | ) | |
| **Justice, Correctional Institutions Division,** | ) | |
| **Respondent.** | ) | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to *Special Order 3-251*, this habeas case has been automatically referred for findings, conclusions, and recommendation.  Based on the relevant filings and applicable law, the habeas petition should be **DENIED**.

**I.  BACKGROUND**

Glen Dale Davis ("Petitioner"), an inmate currently incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID), filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The respondent is William Stephens, Director of TDCJ-CID.

**A.    Procedural History**

Petitioner challenges his custody pursuant to a judgment of the 13th District Court of Navarro County, Texas.  (Clerk's Record "CR", 63-63, doc. 16-8).  He was charged by indictment in cause No. 33,622, with the first degree felony offense of continuous sexual abuse of a young child or children and pleaded not guilty.  (CR, 12, 3 Reporter's Record ("RR") 31.)  A jury found him guilty as charged, and on December 15, 2011, sentenced him to life imprisonment.  (CR 63-64.) Petitioner appealed the conviction, and the Court of Appeals for the Tenth District of Texas affirmed

in an unpublished opinion. *Davis v. State*, No. 10-12-00025-CR, 2012 WL 6674429 (Tex. App.–Waco 2012, pet. ref'd). The Texas Court of Criminal Appeals denied his petition for discretionary review on March 27, 2013. *Davis v. State,* No. PD-0104-13.  In his direct appeal and petition for discretionary review, Petitioner challenged (1) the sufficiency of the indictment, (2) the constitutionality of the statute under which he was charged, and (3) the trial court's failure to adequately inform the jury as to the reasonable doubt standard. *See Davis,* 2012 WL 6674429, at **1-3; PDR (doc. 16-2, at 5.)  He did not seek certiorari review in the United States Supreme Court.

Petitioner filed a *pro se* application for writ of habeas corpus raising two grounds for relief not previously raised in his direct appeal and PDR: his rights against self incrimination and to consult with counsel were violated when officers took his statement, and his counsel was ineffective for failing to (a) challenge the actions of officers in taking his statement, (b) to use medical records to rebut the State's case, (c) to subpoena character witnesses, and (d) to impeach an outcry witness. (doc. 18-9, at 17-18.)  The CCA denied the application without a written order on September 18, 2013.  *See Ex parte Davis*, WR-79,182-02, at cover  (Tex. Crim. App. Sep. 18, 2013.)

Petitioner mailed his federal petition for relief under § 2254 and supporting memorandum on October 11, 2013. (docs. 3,4.) Respondent filed an answer and provided the state court records. (docs. 16-19). Petitioner filed a reply (doc. 22), and additional documents (docs. 23, 24, and 25) that were construed as amendments to the petition. (doc. 26.)  Respondent filed a supplemental response (doc. 27), and Petitioner then filed a supplemental reply. (doc. 28.)

## B.    Factual Background

According to the trial testimony of the 13-year-old victim's birth mother, she gave up her parental rights to the victim and his younger brother, and Petitioner and his wife were their foster

2

parents.  3 RR 42-45. Although the birth mother was in prison for some years, she visited the children in the spring of 2011, after her release.  3 RR 47-48.  She noticed her son was "more quiet" and "something was bothering him."  3 RR 48-49.  Upon questioning, the boy made an outcry of sexual abuse. 3 RR 47-48. She  took the victim straight to the police department, and the next day brought him for a forensic interview at a child advocacy center. 3 RR 50.

The teenage victim testified that from age six, he and his younger brother lived with Petitioner, his wife and two other children—first in a house in Red Oak, and then in a trailer in Blooming Grove, Texas. 3 RR 84-85.  Petitioner would pat him on the back, rub and squeeze his shoulder, and "tickle" him "around the waist and stuff." 3 RR 97-98.  Petitioner was always the one to tuck him in at night. 3 RR 99. Petitioner would come into the victim's room to say goodnight, lie down next to him, pull up the covers, and start rubbing the victim's "belly" and back. 3 RR 99-100. Several months after he moved in with Petitioner and his wife, when he was six and they were living in Red Oak, Petitioner first touched the victim's penis while tucking him in.  3 RR 99. When Petitioner was rubbing the victim's back, he would reach down slowly to grab the victim's butt; when he was rubbing the victim's stomach, he would grab the victim's penis. 3 RR 100-103. Both he and Petitioner were usually wearing only boxers when this happened. 3 RR 100-101.

These interactions with Petitioner continued even after the victim moved with the Petitioner and his wife to Blooming Grove in 2008. 3 RR 108. As before, Petitioner typically touched the him once or twice a week while tucking him in, or after coming into his bedroom later in the night. 3 RR 108-109. Eventually, Petitioner began moving the victim's hand to touch Petitioner's penis. 3 RR 109. Petitioner's boxers had a "pocket," and "you could just stick the thing out." 3 RR 109. Petitioner would "pump" the victim's penis and ask him to do the same to Petitioner.  3 RR 110-111.

3

The victim would "pump" Petitioner's penis until "a little substance would come out," and then he would "reach off of it" because Petitioner would "reach off of his" and tell him "to do the same thing." 3 RR 110-111.

The victim testified that this happened "a lot," so for a long time he thought it was normal. 3 RR 113. Once the victim got older, though, "it kind of disgusted [him] a little bit inside." 3 RR 113. Still, he did not tell anyone but his younger brother for years because he "loved [Petitioner] and didn't want him to leave." 3 RR 114. The victim still cared about Petitioner. 3 RR 114.

The State also presented testimony from a forensic interviewer at the Children's Advocacy Center, an investigator with Child Protective Services (CPS), a CPS caseworker, and two mental health counselors.  The forensic interviewer testified about her extensive training and experience and about the atmosphere, purpose, policies and procedures of the Child Advocacy Center. 3 RR 194- 195.  She then testified that she interviewed the victim in this case, and that he made an outcry of sexual abuse using "age-appropriate words and terms." 3 RR 206-208.

A CPS investigator testified that she met with the victim after his interview with the forensic interviewer.  After the meeting, she contacted Petitioner's wife to explain that she and her department had concluded that the victim should not have any contact with Petitioner, and that a safety plan would need to be in place. 3 RR 228-229. The CPS investigator subsequently informed the victim that although he would have no contact with him, he would need to return to the Petitioner's home. 3 RR 230. In reaction, the victim "was devastated." 3 RR 231.

A CPS caseworker testified that she was assigned to the victim's case, and that she explained that there is no way the victim will ever able to live with his biological mother to him. 4 RR 12-14.

She affirmed that the victim did not recant any of his allegations of sexual abuse upon being made very aware of the situation with his biological mother.  4 RR 14.

A counselor in private practice who frequently works with juvenile victims of sexual abuse testified that the victim suffered from anxiety, flashbacks, depressed mood, and bad dreams, and that he commonly showed an aversion to talking about the sexual abuse. 4 RR 28-29. The counselor also testified that despite feeling embarrassed by the abuse and being hesitant to discuss it, the victim never in any way recanted his outcries. 4 RR 34.

The jury found Petitioner guilty and sentenced him to life imprisonment.

**C.**     **Substantive Issues**

Petitioner raises five grounds for relief:

(1) the indictment gave insufficient notice to Petitioner because it did not specify how many acts of sexual abuse were committed, and failed to allege the house, room, or city in which the acts of abuse occurred;

(2) the statute under which he was charged is facially unconstitutional because it violates his right to jury unanimity;

(3) the trial court erred in failing to define reasonable doubt for the jury;

(4) law enforcement officers violated his Fifth Amendment right against self-incrimination and his Sixth Amendment right to counsel because they took his statement after obtaining an arrest warrant, but without giving him *Miranda* warnings or appointing him an attorney; and

(5) he was denied the effective assistance of counsel when counsel (a) failed to challenge his statement to police officers, and (b) failed to subpoena the character witnesses Petitioner provided to counsel.

## II.  AEDPA STANDARD

Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief with respect to any claim that was adjudicated on the merits in State court proceedings unless the

adjudication of the claim —

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000). In this case, the denial of Petitioner's state writs constitute an adjudication on the merits. *See Ex parte Thomas*, 953 S.W.2d 286, 288-89 (Tex. Crim. App. 1997) (holding that a denial, rather than a dismissal, signifies an adjudication on the merits). The AEDPA standards in 28 U.S.C. § 2254(d) therefore apply.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law, within the meaning of § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

With respect to the "unreasonable application" standard, *Williams* instructs that a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise under *Williams*, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] prece-

dent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## III. SUFFICIENCY OF THE INDICTMENT (GROUND 1)

In his first ground for relief, Petitioner alleges that the State's indictment was insufficient. (doc. 3, at 7; doc. 4, at 6-7.)

Where the state courts have held that an indictment is sufficient under state law, a federal court need not address the issue, unless that indictment was insufficient to invoke jurisdiction. *See McKay v. Collins*, 12 F.3d 66, 68-69  (5th Cir. 1994) ("sufficiency of a state indictment is not a matter of federal habeas relief unless it can be shown that the state indictment is so defective that it deprives the state court of jurisdiction") (citation omitted). Under Texas law, all that is required for

jurisdiction is the presentment of the indictment to the court. *Id.* at 69 (noting that a defect in substance in an indictment does not deprive a state trial court of jurisdiction) (citing *Moreno v.*

*Estelle*, 717 F.2d 171 (5th Cir. 1983)).  Even failure to include a necessary element of an offense in the indictment does not deprive the court of jurisdiction.  *McKay*, 12 F.3d at 69.

The test for resolving the sufficiency of an indictment "involves minimal constitutional standards, not whether a better indictment could have been written." *McKay*, 12 F.3d at 69 (citing *United States v. Chaney*, 964 F.2d 437, 446 (5th Cir. 1992)). To afford notice sufficient to satisfy constitutional requirements, an indictment must include "[t]he essential elements of the offense," but they need not be "expressed in any specific terms." *Id.* (citation omitted). Ultimately, "[a]n indictment should be found sufficient unless no reasonable construction of the indictment would charge the offense for which the defendant has been convicted." *Id.* (citation omitted).

Here, Petitioner challenged the sufficiency of the indictment on direct appeal, claiming that the indictment did not provide specific enough notice to satisfy his right to due process.  The Tenth Court of Appeals found, in relevant part:

> Davis complains that the indictment failed to "specify how many acts of sexual abuse the Defendant is alleged to have committed nor does it allege any time reference for each of said acts other than being within the period of more than three years." The State contends, and we agree, that the indictment tracks the applicable statutory language by alleging each element of the offense of continuous sexual abuse of a child as set forth in the penal code. See TEX. PENAL CODE ANN. § 21.02(b). The indictment also alleges the different means by which Davis was alleged to have committed the offense by listing in detail the specific acts of sexual abuse allegedly committed by him. The acts listed constitute an "act of sexual abuse" under the statute. See TEX. PENAL CODE ANN. § 21.02(c)(2).

> Further, Davis complains that the indictment inadequately describes the number of alleged acts of sexual abuse by merely averring "two or more." The State responds that the specific number and dates of the acts are not required for adequate notice because they are evidentiary in nature. We agree. An indictment that tracks the language of the statute is legally sufficient and the State need not allege facts that are merely evidentiary in nature. *Livingston v. State*, 739 S.W.2d 311, 321 (Tex.Crim.App.1987). Section 21.02 of the Texas Penal Code is a statute that creates a single element of a series of sexual abuse, which requires two or more occurrences. *Render v. State*, 316 S.W.3d 846, 858 (Tex. App.—Dallas 2010, pet. ref'd.). It does

> not make each act of sexual abuse a separate element of the offense, rather each act is a manner and means of the element of the series of sexual abuse. *See Jacobsen v. State,* 325 S.W.3d 733, 737 (Tex. App.—Austin 2010, no pet.). Because the indictment properly alleged a series of sexual abuse as set forth in the statute as constituting two or more of the offenses listed in the statue, the indictment was adequate.

*Davis v. State,* 2012 WL 6674429, at *2. Petitioner raised the same claim in his PDR, and the Court of Criminal Appeals refused review, without written order. *Davis v. State*, No. PD-0104-13.

Because the Texas Court of Criminal Appeals necessarily determined that the indictment did not deprive the trial court of jurisdiction, Petitioner's claim in this case should be dismissed. *See McKay*, 12 F.3d at 67-70. The intermediate appellate court's decision must be given deference. *See generally Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) (finding that "the last reasoned opinion" on a matter should be reviewed to determine whether the state courts' denial of the claim was contrary to or an unreasonable application of federal law). Petitioner cannot show that this decision was an unreasonable application of clearly established federal law or an unreasonable application of the facts in light of the evidence presented. *See* 28 U.S.C. § 2254(e)(1); *see Neal v. Puckett*, 239 F.3d 683, 696 (5th Cir. 2001). Petitioner's first ground for relief is not cognizable upon federal habeas review, and he has failed to meet the standards for granting habeas relief under § 2254(d).

## IV. CONSTITUTIONALITY OF THE CHARGING STATUTE (GROUND 2)

In his second ground for relief, Petitioner asserts that the Texas statute under which he was charged is "facially unconstitutional because it negates his right to jury unanimity." (doc. 3, at 6; doc. 4, at 7-8.

On direct appeal, the Tenth Court of Appeals determined that Petitioner had not raised this challenge in a motion to quash the indictment or at any time during the trial. *Davis v. State*, 2012 WL 6674429, at *2. It found:

Constitutional challenges to a statute generally are forfeited by failure to object at trial. *Curry v. State,* 910 S.W.2d 490, 496 & n. 2 (Tex. Crim. App.1995); *see also Mendez v. State*, 138 S.W.3d 334, 342 (Tex. Crim. App.2004). The constitutionality of a statute as applied must be raised in the trial court to preserve error. *Curry*, 910 S.W.2d at 496; *see Flores v. State*, 245 S.W.3d 432, 437 n. 14 (Tex. Crim. App.2008) (noting the "well established requirement that appellant must preserve an 'as applied' constitutional challenge by raising it at trial"). Further, a defendant may not raise a facial challenge to the constitutionality of a statute for the first time on appeal. *Karenev v. State*, 281 S.W.3d 428, 434 (Tex.Crim.App.2009).

Although Davis filed a motion to quash the indictment, he did not assert that the count should be quashed because the statute is unconstitutional regarding jury unanimity. Nor did he inform the trial court that he believed the statute constitutionally infirm when he affirmatively did not object to the jury charge. Davis did not file a motion for new trial. Accordingly, because Davis did not assert any constitutional infirmity within the statute before the trial court, we hold that Davis has forfeited this complaint. See TEX. R. APP. P. 33.1(a); *Karenev,* 281 S.W.3d at 434; *Flores,* 245 S.W.3d at 437 n. 14; *Curry,* 910 S.W.2d at 496.

*Davis,* 2012 WL 6674429, at *3.

Under Texas' contemporaneous objection rule, a party must make "'a timely objection with specific grounds for the desired ruling'" in order to preserve an issue for appellate review. *Cubas v. Thaler,* 487 F. App'x 128, 130 (5th Cir. 2012) (quoting *Livingston v. Johnson*, 107 F.3d 297, 311 (5th Cir. 1997)). The Fifth Circuit has repeatedly held that a procedural default premised on the petitioner's failure to comply with the Texas contemporaneous objection rule constitutes an adequate and independent bar to federal habeas review. *See Scheanette v. Quarterman*, 482 F.3d 815, 823 (5th Cir. 2007) ("We have recognized a federal petitioner's failure to comply with the Texas contemporaneous objection rule as an adequate and independent state procedural barrier to federal habeas review") (citation omitted); *Parr v. Quarterman*, 472 F.3d 245, 253 (5th Cir. 2006) (holding the Texas contemporaneous objection rule is strictly or regularly applied evenhandedly to the vast majority of similar claims and is, therefore, an adequate procedural bar) (citation omitted); *Wright v. Quarterman*, 470 F.3d 581, 586-89 (5th Cir. 2006) (finding Texas petitioner's hearsay objection

inadequate to preserve a Confrontation Clause objection to the admission of evidence); *Cardenas v. Dretke*, 405 F.3d 244, 249 (5th Cir. 2005) (finding Texas petitioner's failure to contemporaneously object to a venire member's exclusion barred federal habeas review); *Rowell v. Dretke*, 398 F.3d 370, 374-75 (5th Cir. 2005) (finding Texas petitioner's failure to timely object to alleged errors in a jury charge, barred federal habeas relief of the allegedly erroneous jury charge under the procedural default doctrine).

The Tenth Court of Appeals' refusal to consider the merits of Petitioner's claim due to his failure to lodge a contemporaneous objection bars it from federal review under the procedural default doctrine. *See generally Ylst*, 501 U.S. at 803 ("[W]here...the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits."); *Scheanette,* 482 F.3d at 823. Petitioner's second ground for relief must be dismissed as not cognizable.

## V.  FAILURE TO DEFINE REASONABLE DOUBT (GROUND 3)

In his third ground for relief, Petitioner contends that the trial court erred in failing to provide the jury with a definition of reasonable doubt.  (doc. 3, at 7; doc. 4, 8-9.)

The Supreme Court has explained that "[t]he beyond a reasonable doubt standard is a requirement of due process, but the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course." *Victor v. Nebraska*, 511 U.S. 1, 5 (1994) (citation omitted). "Indeed, so long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt…the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof." *Id*. (internal citation omitted).

11

Here, Petitioner does not allege that the trial court failed to instruct the jury that the defendant's guilt must be proved beyond a reasonable doubt. (doc. 3, at 7; doc. 4, at 9.) Nor does Petitioner suggest that the trial court provided the jury a definition of reasonable doubt so improper that it violated the Due Process Clause. *Id.* Rather, Petitioner asserts that the trial court committed structural error by failing to properly define reasonable doubt for the jury upon instructing the jury that Petitioner's guilt must be found beyond a reasonable doubt. *Id.* But Petitioner has failed to allege any violation of state or federal law. The record reflects, and Petitioner does not contest, that the trial court clearly instructed the jury that "[t]he prosecution has the burden of proving the defendant guilty and it must do so by proving each and every element of the offense charged beyond a reasonable doubt and if it fails to do so, you must acquit the defendant." CR 56; see CR 54-58. Further, the trial court properly acted within its discretion in electing *not* to define reasonable doubt for the jury. *See Victor*, 511 U.S. at 5; *Woods v. State*, 152 S.W.3d 105, 115 (Tex. Crim. App. 2004) ("the better practice is to give no definition of reasonable doubt at all to the jury") (quoting *Paulson v. State,* 28 S.W. 3d 570, 573 (Tex. Crim. App. 2000)). Petitioner's argument to the contrary is based upon a failure to consider the more recent law as clarified in *Woods v. State*, 152 S.W. 3d at 115 (noting that "[i]n *Paulson v. State* [27 S.W. 3d 570, 573 (Tex. Crim App. 2000)], we overruled the portion of *Geesa* [*v. State*, 820 S.W. 2d 154 (Tex. Crim. App. 1991)] that required trial courts to instruct juries on the definition of reasonable doubt").

Moreover, Petitioner raised this claim in his PDR, and the Texas Court of Criminal Appeals denied him review without written order. *Davis v. State*, No. PD-0104-13. The implicit findings of fact and are entitled to a presumption of correctness, which may be rebutted only with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Neal v. Puckett,* 239 F.3d 683, 696 (5th Cir. 2001).

Because Petitioner cannot show that the Court of Criminal Appeals's decision was an unreasonable application of clearly established federal law or an unreasonable application of the facts in light of the evidence presented, Petitioner has not met his burden to meet the requirements of § 2254(d). This third ground for relief must be denied.

## VI.  FIFTH AMENDMENT VIOLATION (GROUND 4)

In his fourth ground for relief, Petitioner contends that his Fifth Amendment right to avoid self-incrimination was violated. (doc. 3,  at 7; doc. 4, at 10-12.)

Recognizing the Fifth and Fourteenth Amendments' protection against compelled self-incrimination, in *Miranda v. Arizona*, the Supreme Court has held that certain warnings must be given to a suspect prior to a custodial interrogation. 384 U.S. 436, 444 (1966).  Prior to beginning any custodial interrogation, "the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has the right to the presence of an attorney, either retained or appointed." *Id*. In the absence of these warnings or their "fully effective equivalent," the State may not offer the defendant's resulting custodial statements as evidence of his guilt. *Id.* at 476.

The Supreme Court has, however, "explicitly recognized that *Miranda* warnings are not required 'simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect.'" *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977)).  While "the circumstances of each case must certainly influence a determination of whether a suspect is in custody for purposes of receiving of *Miranda* protection, the ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Id.* (internal quotation marks

13

omitted).  Even where a defendant is "in custody" for purposes of *Miranda*, "giving the warnings and getting a waiver has generally produced a virtual ticket of admissibility" to any resulting statement. *Missouri v. Seibert,* 543 U.S. 600, 608-609 (2004); see *Berkemer v. McCarty*, 468 U.S. 420, 433, n. 20 (1984) ("[C]ases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that the law enforcement authorities adhered to the dictates of *Miranda* are rare.").

Here, Petitioner argues that his Fifth Amendment right to avoid self-incrimination was violated because a detective took his statement before he was provided a *Miranda* warning or arrested, but after another officer had already filed a complaint and obtained a warrant for his arrest.[1] (doc. 4, at 10-11.)  He concedes that he was not under arrest when he gave his statement and that he "voluntarily came to the Sheriff's Department to speak with officers at their request." *Id.* at 11.

---

[1]Petitioner signed a document entitled "Voluntary Statement" which reads as follows:

Date: 3-25-2011 Time:1545 hrs Place: Navarro County Justice Center. My name is Glen Dale Davis and I live at 5363 NW22280, Blooming Grove, TX.

I am giving this statement to Detective Sergeant Hank Bailey, I.D. 151, who has identified himself as a peace officer, and he has duly warned me that I have the following rights: that I have the right to remain silent and not make any statement at all; that any statement I make may be used against me at my trial; that any statement I make may be used as evidence against me in court; that I have the right to have a lawyer present to advise me prior to and during any questioning; that if I am unable to employ a lawyer, I have the right to have a lawyer appointed to advise me prior to and during any questioning and that I have the right to terminate the interview at any time.

My name is Glen Dale Davis and I am giving Detective Hank Bailey permission to type my statement as I tell it to him.

Maybe two weeks ago I was lying in bed with [the victim] and while rubbing his belly I put my hand down in his shorts and grabbed his penis and moved it in a jacking off manner for possibly 4 strokes then I got up and went to bed.

Another instances was about a month when I was lying in bed with [the victim] he grabbed my hand and moved it to his penis and I just took my hand out and went to my bed.  These are the two times that I recall.  I have never touched [the victim's brother] except for helping him put powder on the inside of his legs when he would get "burnies" or chaffing.

I have read this statement consisting of pages, each page of which bears my signature, and I do affirm that all facts and statements contained herein are true and correct.  6 RR State's Ex. 16.

14

He argues that because a warrant had been issued for his arrest when he voluntarily arrived at the police station, he was entitled to *Miranda* warnings prior to any police interaction. *Id.* at 11; (docs. 23, 25). He asserts that he was not given *Miranda* warnings before he made his statement. *Id.* at 10-12.

Although Petitioner now alleges that he must not have been free to leave and was in "constructive custody" when he gave his statement because a warrant had been issued for his arrest, the record did not include proof in support of this argument. (doc.4 at 10-12; CR 11; *see  Beheler*, 463 U.S. at 1125; *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition, unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value.").  He now claims that an arrest warrant had already been issued at the time he was asked to come in to be interviewed at the Navarro County Sheriff's Department. (docs. 23, 25.) Petitioner has also provided a new "Affidavit of Fact" from his son, dated May 18, 2014, attesting that the officers asked him by telephone to have his father come to give a statement without ever acknowledging that his "father would be giving a confession nor did [the detective] state or indicate a warrant at this time had been issued." (doc. 23.)  This document was not previously presented to the state courts.

A.      **Exhaustion/Procedural Bar**

A petitioner must fully exhaust state remedies before seeking federal habeas relief. See 28 U.S.C. § 2254(b)(1)(A). This entails submitting the factual and legal basis of any claim to the highest available state court for review in a procedurally correct manner. *Satterwhite v. Lynaugh*, 886 F.2d 90, 92–93 (5th Cir.1989). While a federal court has limited discretion to stay a habeas

petition and hold it in abeyance so a prisoner can return to state court to exhaust previously unexhausted claims, see *Rhines v. Weber,* 544 U.S. 269, 275 (2005), Texas law prohibits a prisoner from filing a second or successive application for post-conviction relief if the grounds stated therein could have been, but were not, raised in a prior state writ. See Tex.Code Crim. Proc. Ann. art. 11.07, § 4 (Vernon 2005). Specifically, article 11.07, § 4 provides that the state habeas court may not consider the merits of or grant relief based on a subsequent application unless the application contains sufficient specific facts establishing that: 1) the claims could not have been presented previously in the previous application because the factual or legal basis for the claim was unavailable at that time; or 2) by a preponderance of the evidence, but for a violation of the United States Constitution, no rational juror could have found the applicant guilty beyond a reasonable doubt. Petitioner has not alleged, much less shown, that the evidence he now provides to the Court could not have been presented in his state writ application.  *Id.*  Procedural default at the federal habeas level occurs when a prisoner fails to exhaust available state remedies and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991).

To the extent that Petitioner presents a claim premised on evidence that he was denied his Fifth Amendment right against self-incrimination that was not before the Texas Court of Criminal Appeals when it considered his claims on state habeas review, that claim is unexhausted. Because such claim is unexhausted, and because the state of Texas would now find such claim to be procedurally barred,  the proposed new evidence in support of the ground is procedurally barred from federal review.

16

B.    **Merits**

Despite Petitioner's allegations that he did not receive *Miranda* warnings before making his

statement, the record clearly demonstrates that he did. 3 RR 142-157; 6 RR State's Ex.16; *see Ross*,

694 F.2d at 1011. The detective testified at trial that he gave and explained Petitioner's *Miranda*

rights to him prior to taking his statement. 3 RR 142-46.  He ensured that Petitioner was able to read

his rights, as printed on the form on which Petitioner's statement was eventually taken, and then had

him place his initials next to his rights on the written form to indicate his understanding. 3 RR 145-

146; *see* 6 RR State's Ex. 16. According to the detective's testimony and the written "Voluntary

Statement" form Petitioner signed, he was aware of but voluntarily waived his *Miranda* rights prior

to giving his statement. *Id.* The record reflects that Petitioner's incriminating statement followed the

detective's administration of *Miranda* warnings and Petitioner's willing waiver of his rights. *See*

*Seibert*, 543 U.S. at 608-609; *Berkemer*, 468 U.S. at 433, n. 20.  Petitioner's complaint that the

statement was an involuntary confession is not supported by the factual record.

C.    **Harmless Error**

Even if the statement was improperly admitted as an involuntary confession, which the

record proves was not the case, such a trial error is subject to a harmless error analysis. *Arizona v.*

*Fulminante*, 499 U.S. 279, 309-310 (1991).  Even if Petitioner had shown constitutional error,

habeas relief would be warranted only if it had a "substantial and injurious effect or influence in

determining the jury's verdict."*Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993).  Notwithstanding

the evidence about the statement, Petitioner's conviction rests on compelling and incriminating

testimony from the victim, his mother (regarding his outcry), and expert witnesses. *See generally*

4 RR 79-251.  The evidence presented at trial in support of Petitioner's guilt confirms that even if

he had shown constitutional error with regard to the admission of the statement, he cannot show that such error would have had "substantial and injurious effect or influence in determining the jury's verdict."*Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993).  The jury's verdict was supported by substantial evidence, and if any error occurred,  it would have been harmless.

Finally, the Court of Criminal Appeals denied this claim on the merits in refusing to grant Petitioner state habeas relief. *Ex parte Davis*, WR-79,182-02, at cover. Petitioner fails to demonstrate that the state court's decision was an unreasonable application of clearly established federal law or an unreasonable application of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Therefore, Petitioner cannot overcome the § 2254(d) limitations on relief, and his claim must be denied.

## VII.  SIXTH AMENDMENT VIOLATION (GROUND 4)

In his fourth ground for relief, Petitioner also contends that his Sixth Amendment right to consult with counsel was violated.  (doc. 3,  at 7; doc. 4, at 10-12.)

"[T]he Sixth Amendment right [to counsel]…is offense specific. It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced, that is, at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Texas v. Cobb*, 532 U.S. 162, 167-68 (2001) (internal citations and quotation marks omitted).

Here, Petitioner contends that his Sixth Amendment right to counsel was violated because the State introduced his statement at trial without proving that he had knowingly, intelligently, and voluntarily waived his Sixth Amendment rights. (doc. 4. at 11.)  Petitioner gave the statement on March 25, 2011, but he was not indicted until April 21, 2011.  6 RR State's Ex. 16; CR 12.  His

18

written statement therefore could not have been made in violation of his Sixth Amendment right to counsel, and his claim is without merit.

Moreover, Petitioner's claim was considered and rejected as without merit on state habeas review. *Ex parte Davis,* WR-79,182-02 at cover.  He cannot show that the state court's decision was an unreasonable application of clearly established federal law or an unreasonable application of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d).  Relief on this claim must be denied.

## VIII.  INEFFECTIVE ASSISTANCE OF COUNSEL (GROUND 5)

In his fifth and final ground for relief, Petitioner alleges that trial counsel rendered ineffective assistance for failing to fully investigate and challenge the circumstances surrounding his statement to the detective and for failing to subpoena the character witnesses Petitioner identified. (doc. 3, at 7a; doc. 4 at 12-15.)

Under the clearly established federal law, a defendant alleging ineffective assistance of counsel must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Smith v. Quarterman*, 515 F.3d 392, 403 (5th Cir. 2008). A failure to establish either prong of this test requires a finding that counsel's performance was constitutionally effective.  *Strickland*, 466 U.S. at 700.  The Court may address the prongs in any order.  *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

To determine whether counsel's performance is constitutionally deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689.  Counsel are "strongly presumed to have rendered adequate assistance

19

and made all significant decisions in the exercise of reasonable professional judgment." *Pinholster*, 131 S. Ct. at 1403 (quoting *Strickland*, 466 U.S. at 690)).  This standard not only gives trial counsel the benefit of the doubt, but affirmatively entertains the range of possible reasons counsel may have had for proceeding as they did.  *Id*. at 1407.

To establish prejudice, a petitioner must show that there is a reasonable probability, sufficient to undermine confidence in the outcome, that but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Strickland*, 466 U.S. at 694.  In the context of ineffective assistance of trial counsel, the prejudice component of the *Strickland* test "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (U.S. 2000) (citations and internal quotation marks omitted). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel.  *Strickland*, 466 U.S. at 695-96.

In habeas proceedings, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable," not whether defense counsel's performance fell below *Strickland*'s standard.  *Richter*, 526 U.S. at 101.  This review is "doubly deferential" and gives both the state court and the defense attorney the benefit of the doubt.  *Burt v. Titlow*, 134 S. Ct. 10, 13 (2013).

## A.   <u>Failing to Challenge Petitioner's Statement Given to Officers</u>

Petitioner first claims that he advised counsel of the "fabricated confession" put together by the detective and officer, but counsel "did nothing to challenge these inculpatory statements" or "do any investigation" regarding this issue. (doc.4, at 13.)

"Counsel has a duty to make a reasonable investigation of defendant's case or to make a reasonable decision that a particular investigation is unnecessary." *Ransom v. Johnson,* 126 F.3d 716, 723 (5th Cir. 1997) (*citing Strickland*, 466 U.S. at 691). In assessing unreasonableness, however, a heavy measure of deference must be applied to counsel's judgments. *Strickland,* 466 U.S. at 691. To establish that counsel was made ineffective by virtue of a failure to investigate the case against a defendant, the convicted defendant must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial. *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989) (citations omitted); *see also Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir. 1993); *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986). Moreover, under *Strickland*, a petitioner cannot "simply allege but must affirmatively prove prejudice" when complaining of counsel's failure to investigate. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992) (citations omitted).

Similarly, it is well settled that counsel is not required to file frivolous motions or make frivolous objections. *Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998). Accordingly, "failure to make a frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness . . . ." *Green*, 160 F.3d at 1037 (*citing Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995)).

Here, counsel provided an affidavit on state habeas review explaining that he was aware of Petitioner's allegations regarding his statement before trial. *Ex parte Davis,* WR-79,182, at 103-104. His trial strategy included challenging Petitioner's statement to whatever extent possible during his cross-examination of the detective and officer, and eliciting "lengthy testimony from the defendant on direct examination about all of the circumstances of the statement." *Id*. Counsel stated that he

also addressed these issues during his closing argument. The record supports counsel's explanation. *See generally* 3 RR 157-174, 188-193; 4 RR 103-114, 143-144. In light of counsel's sworn explanation, and Petitioner's failure to state any facts that overcome the deference to counsel's strategy to challenge the statements in the manner in which he did, Petitioner has not shown that the strategy was unreasonable or deficient.  This claim of ineffective assistance must be denied.

**B.**     **Failure to subpoena character witnesses**

Petitioner complains that trial counsel failed to call certain character witnesses he identified, and that this contributed to his lengthy sentence. (doc. 4, at 13.)

Complaints of uncalled witnesses are disfavored because the presentation of testimonial evidence is a matter of trial strategy, and allegations of what a witness would have stated are largely speculative.  *See Gregory v. Thaler*, 601 F.3d 347, 352-53 (5th Cir. 2010).  To prevail on this type of claim, a petitioner must name the witness, demonstrate that he was available to testify and would have done so, set out the content of the proposed testimony, and show that the testimony would have been favorable to a particular defense.  *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985). The Fifth Circuit has held that "hypothetical or theoretical testimony will not justify the issuance of a writ . . . ." *See Martin v. McCotter*, 796 F.2d 813, 819 (5th Cir. 1986).  Further, "[w]here the only evidence of a missing witness testimony is from the defendant, this Court [Fifth Circuit] views claims of ineffective assistance with great caution." *See Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986) (citing *Schwander v. Blackburn*, 750 F.2d 494, 500 (5th Cir. 1985)); *see also United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir. 1983) (finding claim meritless because Cockrell failed to produce the affidavit of the uncalled witness).

Here, counsel's affidavit on state habeas review also addressed this claim. *Ex parte Davis,*

WR-79,182-02, at 106-107. It explained that the victim's younger brother had also made sexual abuse outcries against Petitioner, but due to some recantation, the State did not proceed with the related charges. *Id.* at 105.  Throughout Petitioner's trial, one of his primary concerns was to "not say or do anything that would open the door to the State to bring up allegations of the younger child." *Id.* Counsel explained to both Petitioner and his wife prior to trial that he felt that "putting on any character evidence by way of reputation or opinion testimony would open the door for the State to ask every witness 'Have you heard' or 'Did you know' questions about the abuse of the younger child. *Id.* In counsel's view, "any marginal benefit" to Petitioner's defense was outweighed by the risk of making the jury wonder whether there is "another victim out there." *Id.* Further, counsel was able to bring up Petitioner's good character during the guilt/innocence phase, with much less risk, by having Petitioner's wife testify to Petitioner's  years of service to his church as a camp counselor, his service as a foster parent, and his prior lack of involvement with law enforcement. *Id.* ; *see* 4 RR 72-73, 87.

In light of trial counsel's sworn explanation, Petitioner cannot demonstrate that counsel's approach was not one of reasoned trial strategy, let alone show that it rendered counsel's performance deficient. *See Strickland,* 466 U.S. at 690; *Green v, Johnson,* 116 F.3d 1115, 1122 (5th Cir. 1997) ("We will not find inadequate representation merely because, with the benefit of hindsight, we disagree with counsel's strategic choices") (citing *Strickland*, 466 at 689-90). Moreover, given the overwhelming evidence of Petitioner's guilt and the nature of the crime of which the jury convicted him, Petitioner fails to show that counsel's decision not to present character witnesses resulted in actual prejudice with respect to the jury's verdict or to Petitioner's sentence.

Most importantly, in denying Petitioner's state habeas application, the CCA made implicit

credibility determinations in favor of trial counsel and against the allegations of ineffective assistance. *Ex parte Davis,* WR-79,182-02, at cover, 15; *see Marshall v. Lonberger*, 459 U.S. 422, 433 (1983) (applying presumption of correctness to implicit finding against the defendant's credibility, where that finding was necessarily part of the court's rejection of the defendant's claim). The implicit and explicit factual findings of the Court of Criminal Appeals, as well as its credibility determinations, are entitled to a presumption of correctness that may be overcome only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Neal*, 239 F.3d at 696. Petitioner has not shown that the state court's rejection of his claim was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court. Nor has he shown that the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d).

In conclusion, Petitioner cannot meet the § 2254 (d) standards to obtain relief, and his claims of ineffective assistance of counsel must be denied.

## IX.  RECOMMENDATION

The petition for habeas corpus relief under § 2254 should be **DENIED** with prejudice.

**SO RECOMMENDED on this 18th day of May, 2015.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

25